## EX PARTE MARGARET DAVIS

No. 34,318.  January 17, 1962

*John H. Crooker, Alton F. Curry* (of counsel: *Fulbright, Crooker, Freeman, Bates & Jaworski)*, Houston, for relator.

*Clyde W. Woody and Joe H. Reynolds,* Houston, for respondent.

McDONALD, Judge.

This is an original Application for Writ of Habeas Corpus brought by relator, Margaret Davis, asking her release from the custody of C. V. (Buster) Kern, Sheriff or Harris County, respondent.

The relator alleges in her petition that she is held in confinement and restraint not by virtue of any valid warrant, writ, commitment or other process of any court, but that her confinement is based solely and alone on a purported Judgment and Order of the County Criminal Court at Law No. 2 in Harris County, wherein the judge thereof, the Honorable Billy Ragan, on December 11, 1961, held relator in contempt of court.

Relator attached to her petition as Exhibit "A" a copy of the Judgment and Order of the court holding her in contemt. Judge Ragan's Order is fuly set forth herein so that we may properly view and discuss it later on in this opinion. The Order reads as follows:

"WHEREAS, on this the 11th day of December, A. D., 1961 in Open Court in the presence of the Judge thereof, and while Court was engaged in regular business, hearing and determining causes pending before it, one Margaret Davis was guilty of disobeying an Order of the Court in the immediate view and presence of said Court as follows, to-wit: "In that Margaret Davis *has* heretofore on or about the 21st day of November, A. D., 1961 was Ordered to remain outside of the rail, which area is reserved for Officers of the Court and parties of interest to pending causes, which Order was issued because of your previous and continued conduct of entering into the trial area when trial were in progress and going up to the table where the Attorneys sat

and leafted through and inspected their files and asking questions of Attorneys within the immediate view and hearing of Juries at a time when questions were being propounded to the witnesses for the Juries' consideration, for exhibiting within the view of Juries Offense Reports and other Reports, which had not been admitted into evidence, all of which Acts and Conduct were detrimental to the proper administration of the Court and obstructive of Justice and prejudicial to the rights of litigants involved in the trial, and BE IT REMEMBERED that on this the 11th day of December, A. D., 1961 and in the presence of the Court while the Court was in the process of conducting its business that you, Margaret Davis, did violate the Court's Order as heretofore recited entered on the 21st day of November, 1961 by entering into that area within the rail which you had heretofore been Ordered to refrain from entering, and such act was a willful, intentional and direct disobedience of the order of this Court and constitutes a Contempt of this Court.

"NOW, THEREFORE, the said Margaret Davis now being present in Court, it is ORDERED AND ADJUDGED by this COURT that the said Margaret Davis, by reason of said act, was and is guilty of Contempt of the authority of this Court, committed in its presence on this the 11th day of December, A. D., 1951, and is ORDERED that a fine of One Hundred Dollars ($100.00) be assessed against Margaret Davis as punishment, and all costs of this proceeding, for which execution may issue, and the Clerk of this Court shall issue a Writ Commanding the Sheriff or any Constable of this Court to take the said Margaret Davis into his custody and place her in Jail in this County, and there safely keep her in Jail until said fine and costs are fully paid thereby purging herself of this contempt.

"Entered this 11th day of December, 1961."

Relator contends that the real cause for the Order of November 21, 1961, was personal resentment toward her because of her article published a few hours earlier in the Houston Press questioning the propriety of the judge's actions concerning his affidavit that he devoted half of his time to his insurance business.

Respondent contends:

(1) That relator was confined and restrained by virtue of an Order and Judgment, and adjudged to be in contempt of court for the reasons stated in the Order.

(2) That the Order of said county judge dated November 21, 1961, was issued as to the relator solely because relator was the only person who had done the acts complained of and recited in said Order.

Very able counsel for both the relator and the respondent have supplied us with excellent briefs. In addition, we have had filed *amicus curiae* briefs.

By brief and oral argument, relator contends that the court's action in holding her in contempt was based upon a void and invalid Order which is of no force and effect, that the action of the court resulted in "never-ending" term of punishment, imposed, and that the Order and Judgment were both arbitrary and capricious, and beyond the court's power and jurisdiction; that relator was unjustly and illegally discriminated against by denying rights and privileges to her alone while freely extending such rights and privileges to all other persons of her class similarly situated. Relator further contends that undue, unreasonable and illegal restrictions on freedom of speech and of the people to have news disseminated to them as guaranteed by the Federal Constitution has resulted from the court's action. Relator further says that the court's Order was vague and uncertain in meaning, and utterly failed to set forth with reasonable clarity any acts done by relator constituting contempt of court.

By brief and oral argument, respondent contends, first, that this court does not have jurisdiction for writ of habeas corpus for the reason that the relator has not alleged facts sufficient to justify this court to exercise its jurisdiction in granting a writ of habeas corpus under a contempt decree, as she has made no showing that the civil courts have declined to pass on the legality of the confinement in question and that, under the circumstances, she is estopped to question the contempt decree. Respondent next contends that the relator has not entered into a sufficient bond, nor has she shown that she is restrained or under custody. Respondent further says that the application for the writ of habeas corpus was presented to the court prior to the time when the relator was in custody and was therefore a pre-

mature application to this court for the writ and that it should be dismissed.

With this statement of the nature of the proceedings and the contentions of the parties, we shall now direct our attention to the issues presented, in order to make a correct disposition of the case.

We entertain no doubt that this court has ample authority to issue the writ of habeas corpus in almost any conceivable case. Ex parte Degener, 17 S.W. 1111. The only original jurisdiction possessed by the Court of Criminal Appeals is the issuance of the writ of habeas corpus. Ex parte McKenzie, 116 Tex. Cr. Rep. 144, 29 S.W. 2d 771; the Constitution of Texas, Article V, Sec. 5; Ex parte Alderete, 83 Tex. Cr. Rep. 358, 203 S.W. 763. Habeas corpus in a given case is entirely within this Court's discretion. Ex parte Gould, 60 Tex. Cr. Rep. 442, 132 S.W. 364, and Ex parte Kemper, 86 Tex. Cr. Rep. 25, 216 S.W. 172.

We recognize the various holdings of our Supreme Court wherein they state that their jurisdiction in habeas corpus proceedings is limited to cases arising from contempt imposed as a result of a violation of some order, judgment or decree in a civil case. Ex parte Morris, 349 S.W. 2d 99. However, in the case at bar, we have before us a habeas corpus proceeding based upon a contempt imposed by a County Criminal Court at Law, not by virtue of any violation that would come within the purview of the doctrine announced by the Supreme Court, but for a violation of a verbal order of a criminal court judge.

Respondent contends in his brief that this Court acquires jurisdiction only after there has been a proper bond executed in the court below, or if the relator is in custody. He refers to Exhibit "A", attached to respondent's brief, which is a part of the record in this case, and says that this Court did not acquire jurisdiction by virtue of this alleged bond. It is clear to us from the numerous authorities cited by respondent in his brief that he is complaining of the bond in the case at bar as being insufficient to support *an appeal,* and that he is relying upon the provisions of Articles 817 and 818, V.A.C.C.P. We agree with respondent that where there is *an appeal,* the provisions of the two aforementioned statutes governing appeal bonds would apply; his position would be well taken and the application for the writ should be dismissed for want of jurisdiction, in the absence of a recognizance or bond, substantially in the form

prescribed by statute. We think, however, that in cases of this kind, where an original application is made for the writ of habeas corpus, *the provisions of Article 144, V.A.C.C.P., control.* This article states that when the return of the writ has been made, and the applicant brought before the court, *he is* no longer *detained* on the original warrant or process, but *under the authority of the habeas corpus.* The safekeeping of the prisoner, pending the examination or hearing, *is entirely under the direction and authority of the judge or court issuing the writ,* or to which the return is made. He may be bailed from day to day or be remanded to the same jail whence he came, or to any other place of safekeeping *under the control of the judge or court,* until the case is finally determined. We think in the case at bar, where the record shows that the Presiding Judge of this Court made the application returnable before this Court on January 3, 1962, at 9:30 A.M. and *set the bond at $200.00,* the bond herein is controlled by the provisions of Article 144, supra. We further think that the record in this cause, in viewing the officer's return, amply reflects that the relator was in custody until this Court granted the application and set the bond. Respondent's contention as to the insufficiency of the bond, and his contention that the relator has not shown that she was restrained or under custody, are both overruled.

After carefully reviewing the entire record, we find that the Order entered by the trial judge on November 21, 1961, and upon which he gave reliance by subsequently holding relator in contempt on December 12, 1961, for violating it, is void. If, as relator contends, the Order directing the relator to remain outside the rail was in fact made because of personal resentment toward her, because of the article published that day concerning his affidavit that he devoted half his time to the insurance business, a judgment of contempt based upon the violation of such Order could not be upheld. But assuming that the recitals in the contempt decree are true and are not overcome by the affidavits before us, it is clearly evident to us that the Order is too vague and too general in its terms to be effective. It recites that relator was ordered on November 21, 1961, to remain outside of the rail, and that the Order was issued "because of your previous and continued conduct of entering into the trial area when trial were (sic) in progress and going up to the table where the attorneys sat." And then it continues and recites that "all of which acts and conduct were detrimental to the proper administration of the Court and obstruction of justice." When relator exhibited within the view of a jury an offense report

which had not been introduced in evidence, as recited in the judgment, he might then have taken disciplinary measures or held her in contempt. He may not, however, overlook such conduct, wait until a later day, and then bar such person from coming within the rail because of such prior misconduct. The Order recites no dates as to any alleged previous misconduct, nor does it say how long the alleged misconduct continued, nor does it allege any act of misconduct to have been committed on the date of the entry of the Order. It clearly seems to have been an effort to punish relator for alleged past acts of misconduct, in very general terms, without in any manner apprising her of any specific act of misconduct committed on her part at any stated time. The rule is that the recitals in a judgment for contempt are presumed to be true, and the burden is upon relator to overcome such presumption. Ex parte Brewer, 242 S.W. 2d 430. In order for such rule to be equitable and operative, the judgment must of necessity be so definite and specific that one held in contempt might feasibly overcome such presumption by proof. We observe that a contempt order should be almost, if not as definite and certain, in its terms, as an information or an indictment. We are not here concerned with the commission of any act or acts on the part of this relator anterior to the entry of the Order upon which the contempt was based. We do not deny the trial court the right to punish for contempt a reporter for conduct in the presence of the court which interferes with orderly proceedings in the administration of justice. We also recognize his authority to enter an order excluding all newspaper reporters and all other reporters from inside the rail of his courtroom and reserve that particular area solely for the attorneys, litigants and witnesses and court officials. We do not think, however, that a trial judge has the authority to exclude one particular individual from coming inside the rail of his courtroom and continue to allow other individuals similarly situated to come within the area encompassed by the rail. We can see no difference if a judge were to enter such an order, as was done here, excluding a member of the bar from coming inside the rail. We do think that if the order entered by respondent were allowed to stand it would constitute a deprivation of relator's rights, that it would infringe upon due process as we understand it, as set forth in both the State and Federal Constitutions, and that it would be highly discriminatory in nature.

While freedom of speech and freedom of the press are alleged to have been impaired by the trial court's Order in this case, we

do not think that they are before us for review, except inferentially.

We voice the further opinion that the Order in question would still be void on its face without considering any of the other matters in the record in this case.

The three Judges and two Commissioners of this Court are all former District Judges of this State, and we are certainly aware of the necessity for a judge of a court to preserve order and decorum, demand respect and enforce its mandates and decrees. There can be no doubt that the judge has the right to punish for contempt, and yet this right is not given for the private advantage of the judge but to preserve that respect in regard to which the court cannot be deprived and maintain its usefulness. This protective power resides in the courts, and may be exercised when necessary to the due safeguarding of their honor and integrity; yet its exercise is in some sense the trial of a case in which the judge personally is interested, and extreme caution is required that the judge in redressing a public wrong does not also find revenge for his private grievances. It was stated in Ex parte West, 60 Tex. Cr. Rep. 485, 132 S.W. 339.

"No claim or privilege can be admitted for a Judge except as pertains to his official acts. Such acts are the acts of the people imposed by them upon him, and it is their duty to defend against them or give the Judge power as an officer to do so for them."

It is ordered that relator be released from the custody or restraint under such judgment of contempt and that same be held void.